IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

United States of America,      :     CRIMINAL ACTION
                               :     NO. 19-00604
     v.                        :
                               :
James Mabry                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 23, 2021


## I. INTRODUCTION

Movant is James Mabry, a former inmate currently serving a three-year term of supervised release. Mabry seeks a reduction of the three-year term based on his alleged rehabilitation. The Government argues that this motion is barred by an appellate and collateral attack waiver that Mabry signed in his plea agreement in 2005, and that early termination is not warranted even if the waiver is unenforceable.

With respect to this motion in particular, the Court finds that the waiver in Mabry's plea agreement is unenforceable. Additionally, after considering the relevant 18 U.S.C. § 3553 factors, Mabry's conduct, and the interests of justice, the Court finds that early termination of supervised release is warranted in this case.

## II.  BACKGROUND

On May 3, 2005, Mabry pled guilty pursuant to a plea agreement to possession with intent to distribute approximately 6.8 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The offense occurred on or about March 19, 2004. Prior to this offense, Mabry had been convicted four times in state court for simple assault and burglary-related offenses.

On March 3, 2006, Mabry was sentenced in the United States District Court for the Middle District of Pennsylvania to 210 months imprisonment to be followed by four years of supervised release. Neither restitution nor a fine were required at the time of sentencing. The court ordered Mabry to pay a $100 special assessment, which Mabry has completed.

On February 19, 2019, Mabry's sentence was reduced by the sentencing court to 168 months to be followed by three years of supervised release, pursuant to section 404 of the First Step Act of 2018. Mabry was released from prison that same day to begin serving his supervised release term. Mabry's supervision was transferred to the Eastern District of Pennsylvania on October 16, 2019. He now has less than eleven months left to serve on supervised release (set to expire on February 18, 2022).

Mabry's supervision officer, Robert Scales, notes that Mabry has been in full compliance with his supervision

conditions and has performed very well under his term of supervised release. The probation office has classified Mabry as a low/moderate risk level offender. He is required only to report to his probation officer once a month via online reporting and in person every three months. Mabry reports that he has maintained his sobriety since his release from incarceration.

Mabry is now 57 years old. He resides in Philadelphia and works full-time with the School District of Philadelphia in general cleaning and maintains a stable residence. Mabry has also obtained training in IT support.

## III. LEGAL STANDARD

This Court possesses the authority to terminate Mabry's supervised release term before its natural expiration date pursuant to 18 U.S.C. §§ 3583(e)(1), 3605. See Burkey v. Marberry, 556 F.3d 142, 146 n.3 (3d Cir. 2009).

A court may terminate a term of supervised release where, in addition to considering the relevant factors under 18 U.S.C. § 3553(a), the court determines that the defendant has served one year of supervised release and "it is satisfied that [early termination] is warranted by the conduct of the defendant released and the interest of justice." United States v. Melvin, 978 F.3d 49, 52 (3d Cir. 2020) (quoting 18 U.S.C. § 3583(e)(1)).

3

The Third Circuit has concluded that "[t]he expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." Id. (quoting United States v. Emmett, 749 F.3d 817, 819 (9th Cir. 2014)).

Specific findings of fact for each statutory factor are not required under § 3583(e)(1). Id. at 52-53. The statute requires only that the court articulate that it has considered the relevant factors under § 3553(a), the defendant's conduct, and the interests of justice in rendering its decision. See id. at 53. Thus, in regard to a request for early termination, § 3583(e)(1) instructs the court to consider the following factors under § 3553(a):

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

Id. at 52 (quoting United States v. Davies, 746 F. App'x 86, 88-89 (3d Cir. 2018)).

4

The Third Circuit has noted that the only traditional sentencing factor that is not relevant to a court's decision under § 3583(e) is the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. "This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012) (citing S. Rep. No. 98-225, at 124 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3307).

**IV. DISCUSSION**

Mabry requests that the Court terminate his supervised release pursuant to 18 U.S.C. § 3583(e)(1).

**A. Whether the Plea Agreement Bars Mabry's Motion**

The Government argues that the waiver in Mabry's plea agreement bars his motion for early termination of supervised release. The Court will consider (1) whether "the issues [Mabry] pursues . . . fall within the scope of his appellate [and collateral attack] waiver" and (2) whether Mabry "knowingly and voluntarily agreed to the appellate [and collateral attack] waiver." United States v. Oyerinde, 784 F. App'x 111, 113 (3d Cir. 2019).

**1. Interpreting the Scope of the Waiver**

5

The waiver specifically provides as follows:

The defendant is aware that Title 18, United States
Code, Section 3742 affords a defendant the right to
appeal the conviction and sentence imposed.
Acknowledging all of this, the defendant knowingly
waives any right to appeal any conviction and
sentence, including a sentence imposed within the
statutory maximum, on any and all grounds set forth in
Title 18, United States Code, Section 3742, or any
other grounds constitutional or non-constitutional,
including the manner in which that sentence was
determined in light of Blakely v. Washington, 124 S.
Ct. 2531 (June 24, 2004) [and United States v. Booker
and Fan Fan, 128 S. Ct. 738 (2005)]. The defendant
also waives the defendant's right to challenge any
conviction or sentence or the manner in which the
sentence was determined in any collateral proceeding,
including but not limited to a motion brought under
Title 28, United States Code, Section 2255. The
defendant further acknowledges that this appeal waiver
is binding only upon the defendant, and that the
United States retains its right to appeal in this
case.

Plea Agreement ¶ 35 (emphasis added).

The Government primarily cites United States v. Damon, 933

F.3d 269 (3d Cir. 2019) as support for their argument that the

above language plainly bars motions under § 3583(e), but that

case is easily distinguishable. The appellate waiver in Damon

included broad language that clearly precluded the defendant

from filing "any appeal, any collateral attack, or any other

writ or motion . . . which challenges the sentence imposed." Id.

at 271 (emphasis added).[1] Mabry's plea agreement is narrower and

---

[1]     Even if one could read Damon for the proposition that a motion under §
3583(e) constitutes a collateral attack, the case is not on point, as it was
decided in 2019, and the plea agreement was executed in 2005. See United
States v. Williams, 536 F. App'x 169, 172 n.3 (3d Cir. 2013). Thus, under

only bars appeals and collateral attacks. Thus, the question becomes whether the motion is an appeal, a collateral attack, or neither. If it is an appeal or collateral attack, the motion to reduce a term of supervised release would be barred. If the motion is neither an appeal nor a collateral attack, it would not be barred.

Initially, it is important to note that "plea agreements, although arising in the criminal context, are analyzed under contract law standards." Id. at 272 (quoting United States v. Corso, 549 F.3d 921, 927 (3d Cir. 2008)). Thus, when analyzing words in a plea agreement, we give them their "ordinary meaning" and do not stretch them beyond "normal usage." Id. at 273, 275.

Given the ordinary meaning of "appeal" and "collateral attack," the waiver in this case does not bar Mabry's motion for early termination of supervised release. First, the verb "appeal" in the legal context is ordinarily defined as: "To seek review (from a lower court's decision) by a higher court." See Appeal, Black's Law Dictionary (11th ed. 2019). Given that the

---

Williams, the "plain meaning" is understood as of the time that the plea agreement was executed, which was 2005 in this case. Given that Damon was not decided until 2019, Damon is inapposite to this case.

    For this reason, the Government's reliance on United States v. Ball, 2021 WL 51461, at *3 & n.26 (E.D. Pa. Jan. 6, 2021), is also misplaced. Ball relied on United States v. Oyerinde, 784 F. App'x 111 (3d Cir. 2019), which held that a motion for early termination of supervised release was barred by the defendant's appellate/collateral attack waiver. But the decision in Oyerinde was premised on the basis that the action was an appeal, not a collateral attack. The decision in Ball is also inapposite because the plea agreement here preceded the decision in Ball by sixteen years.

United States District Court for the Eastern District of
Pennsylvania is a court of collateral jurisdiction, not a higher
court than the United States District Court for the Middle
District of Pennsylvania (i.e., the court which accepted the
plea and imposed the sentence under the plea agreement), Mabry's
motion does not qualify as an appeal.

The next question becomes whether Mabry's motion is a
collateral attack.[2] The phrase "collateral attack" in the legal
context is ordinarily defined as "[a]n attack on a judgment in a
proceeding other than a direct appeal; esp., an attempt to
undermine a judgment through a judicial proceeding in which the
ground of the proceeding (or a defense in the proceeding) is
that the judgment is ineffective." See Collateral Attack,
Black's Law Dictionary (11th ed. 2019).

At least one court of appeals, the Tenth Circuit, has held
that a motion to modify a sentence, albeit pursuant to 18 U.S.C.
§ 3582(c)(2) (i.e., a motion to modify in light of a new
amendment to the applicable sentencing guidelines), is not
barred by a collateral attack waiver. The court explained as
follows:

> The conventional understanding of "collateral attack"
> comprises challenges brought under, for example, 28

---

[2]     The Court cannot find any distinction between "collateral attack" and
"collateral proceeding" in any case law, and the Government does not seem to
argue that a distinction exists, given their frequent referral to Mabry's
"collateral attack waiver" in their brief. Thus, the Court will not
distinguish between the two.

U.S.C. § 2241, 28 U.S.C. § 2254, 28 U.S.C. § 2255, as well as writs of coram nobis. These are extraordinary remedies that complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction. It is by no means obvious that a defendant's motion <u>to modify</u> his sentence under 18 U.S.C. § 3582(c)(2) . . . would be reasonably understood as a "collateral attack" on his sentence as opposed to a motion prospectively to modify a sentence based on events occurring after the original sentence was imposed.

<u>United States v. Chavez-Salais</u>, 337 F.3d 1170, 1172 (10th Cir. 2003)[3] (citing <u>United States v. Torres-Aquino</u>, 334 F.3d 939 (10th Cir. 2003)). In <u>United States v. Williams</u>, 536 F. App'x 169, 172 n.3 (3d Cir. 2013) (citations omitted), the Third Circuit similarly noted that appellate and collateral attack waivers

would probably not bar the filing of (and an appeal of the denial of) a § 3582(c)(2) motion. To the extent that the discussion of "collateral" in <u>Wall v. Kholi</u>, 562 U.S. 545 (2011), affects the validity of these cases, we are required to analyze plea agreements under contract law standards. Hence, the pre-<u>Kholi</u> definition of "collateral" would probably apply to a plea agreement executed in 2007.

Courts have relied on similar reasoning to conclude that motions for early termination of supervised release under § 3583(e) (i.e., the motion at issue in this case) also do not

---

[3]    The Government contends that the Third Circuit decisions in <u>United States v. Mabry</u>, 536 F.3d 231 (3d Cir. 2008) ("<u>Mabry I</u>"), <u>abrogated on other grounds</u>, <u>Garza v. Idaho</u>, 139 S. Ct. 738 (2019), and <u>Mabry v. Shartel</u>, 632 F. App'x 707 (3d Cir. 2015) ("<u>Mabry III</u>") demonstrate that the waiver in this case, which is the same waiver discussed in <u>Mabry I</u> and <u>Mabry III</u>, controls the outcome here. The reasoning in <u>Chavez-Salais</u>, however, demonstrates that the Government's reliance on <u>Mabry I</u> and <u>Mabry III</u> is misplaced, given that those cases implicated habeas actions, which are explicitly barred by the waiver in that they are collateral attacks. The issue here, to the contrary, is whether a motion for early termination of supervised release, which is not clearly either an appeal or a collateral attack, is also barred.

qualify as collateral attacks. See, e.g., United States v. Darthard, No. 09-20156, 2018 U.S. Dist. LEXIS 166194, at *3, *5 (D. Kan. Sept. 27, 2018) ("[I]f the court interpreted the . . . plea agreement to preclude [defendant] from attempting to modify his sentence in any respect, then the separate appeal and collateral attack waiver contained in the agreement would be rendered meaningless. . . . Without question, a motion to modify under § 3583(e) is not a collateral attack."). More recently, Judge Padova aptly summarized the applicable rationale as follows:

> While [defendant] waived the right to appeal and collaterally attack his sentence in his Guilty Plea Agreement, he did not waive the right to file any other sort of motion with respect to his sentence. The instant motion does not constitute an appeal of [defendant's] sentence, request reconsideration of his sentence, or ask us to reverse or vacate any part of his sentence. We therefore conclude that the instant Motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e) does not constitute an appeal or collateral attack of [defendant's] sentence, which would be covered by the appellate waiver and, accordingly, we conclude that [defendant] did not waive his right to bring the instant Motion in his Guilty Plea Agreement.

United States v. Crews, No. CR 10-663-5, 2020 WL 6581430, at *2 (E.D. Pa. Nov. 10, 2020).

Given that motions for early termination of supervised release were not included within the scope of the waiver in this case, the Court cannot interpret the waiver in Mabry's plea

agreement to bar motions for early termination of supervised release.

### 2. **Whether the Waiver Was Knowing and Voluntary**

Even if one could construe the language in Mabry's plea agreement to bar motions for early termination of supervised release, the Court must consider, inter alia, whether the waiver was entered into knowingly and voluntarily before deciding to enforce it. See United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008); see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."). Although "a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty . . . to examine the knowing and voluntary nature of the waiver." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008), abrogated on other grounds, Garza v. Idaho, 139 S. Ct. 738 (2019).

The Government argues that Mabry I and Mabry III conclusively establish that the waiver was knowing and voluntary, but again, that was in the context of two habeas cases, which clearly meet the definition of a collateral attack.

As relevant to the specific case at hand, in addition to the text of the plea agreement, there is nothing in the colloquy or the Government's sentencing memorandum which indicates that

Mabry was put on notice that he was surrendering his right to file a motion under 18 U.S.C. § 3583(e). There are also no reports that Mabry's lawyer advised him of such consequences.

Under these circumstances, the Court cannot say that Mabry knowingly and voluntarily waived his right to bring a motion for early termination of supervised release under § 3583(e)(1). Accordingly, the waiver is not enforceable with respect to this particular case.

### B. Whether Early Termination Is Warranted

A district court has authority to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release," so long as it considers the factors in 18 U.S.C. § 3553(a) and the release is "warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The burden is on the defendant to show that early termination is warranted under the factors set out in the statute. See United States v. McDowell, 888 F.2d 285, 291 (3d Cir. 1989) ("It therefore logically follows that the burden of ultimate persuasion should rest upon the party attempting to adjust the sentence."). Mabry has served more than one year of supervised release, so the Court must now consider the factors under § 3553(a) and whether release would be warranted by Mabry's conduct and in the interest of justice.

### 1. **Section 3553(a) Factors**

In regard to § 3553(a)(1) (i.e., the nature and circumstances of the offense and the defendant's history and characteristics), Mabry pled guilty to possession with intent to distribute approximately 6.8 grams of cocaine base.[4] The offense occurred on or about March 19, 2004. Prior to this offense, Mabry had been convicted on four occasions in state court involving simple assault and burglary-related offenses. These convictions are the extent of Mabry's criminal history and he argues that they can be attributed to his drug addiction.[5] However, Mabry reports that he has maintained his sobriety since his release from custody and the Government does not contend otherwise. The probation office has classified Mabry as a low/moderate risk level offender. He is required only to report to his probation officer once a month via online reporting and in person every three months. He has only eleven months left on supervised release.

---

[4]     The Government points out that although Mabry only pled guilty to possession with intent to distribute approximately 6.8 grams of cocaine base, his relevant conduct involved 9.4 grams of crack cocaine, 32.3 grams of powder cocaine, $1600 in drug proceeds, a handgun, and two loaded magazines of ammunition.

[5]     The Government argues that Mabry is minimizing his criminal history and that his convictions arose out of eight separate arrests involving burglary, assault, and terroristic threats. Additional points were added to his criminal history because Mabry undertook the conduct underlying his federal conviction while he was already under supervision. Furthermore, the Government argues that one of Mabry's convictions (the one in 2001) was not attributable to drug use because Mabry told the probation office that he was free of drugs between 1994 and 2003.

In relation to § 3553(a)(2) (i.e., the need to afford adequate deterrence, protect the public, and provide the defendant with needed training or treatment), Mabry is 57 years old and has not had any arrests or convictions since his release from custody. He resides in Philadelphia, works full-time with the School District of Philadelphia in general cleaning, and has maintained a stable residence. Mabry also has obtained training in IT support. Mabry appears to present a low risk to the public of future criminal activity.

With respect to § 3553(a)(3)-(4) (i.e., the kinds of sentence and sentencing range established for the defendant's crimes), Mabry has served his entire sentence of incarceration as well as 25 months on supervised release in relation to the offense of conviction. Thus, he has served a sentence within the applicable guideline range as well as the majority of the applicable supervised release term.

With respect to § 3553(a)(5) (i.e., pertinent policy statements from the United States Sentencing Commission), Mabry points out that the United States Sentencing Commission has noted that early termination is warranted for laudable, but not necessarily unusual, conduct. In its commentary to § 5D1.2 of the Sentencing Guidelines, the Commission noted that "the court may wish to consider early termination of supervised release if the defendant is an abuser of narcotics, other controlled

14

substances, or alcohol who, while on supervised release, successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant." U.S.S.G. § 5D1.2, cmt. n.5; see also U.S.S.G. Supp. App. C. Amend. 756 (adding this commentary). While it is not clear whether Mabry has completed a specific treatment program, Mabry argues that he has successfully maintained his sobriety since his last incarceration and the Government does not contend to the contrary.

In relation to § 3553(a)(6) (i.e., the need to avoid unwarranted sentence disparities), there do not appear to be any unwarranted sentence disparities that would occur from granting Mabry's motion for an eleven-month reduction of supervised release.

Lastly, in relation to § 3553(a)(7) (i.e., the need to provide restitution), neither restitution nor a fine were required at the time of sentencing. The only financial obligation ordered was a $100 special assessment, which Mabry has fulfilled.

Thus, an examination of the relevant factors under § 3553(a) weighs in favor of granting early termination of supervised release.

## 2. **Whether Release Is in the Interest of Justice**

In addition, Congress has provided that before a lawful term of supervised release is terminated early, the Court must consider whether termination is in the "interest of justice." See 18 U.S.C. § 3583(e)(1). The phrase "interests of justice" is "a peculiarly context-specific inquiry," not susceptible to a "general definition." See Martel v. Clair, 565 U.S. 648, 663 (2012). Mabry argues that it would be in the interests of justice to terminate a term of supervised release where the purpose of supervised release has been fulfilled.

The Third Circuit has recognized that "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)[6] (quoting United States v. Albertson, 645 F.3d 191, 197 (3d Cir. 2011)). The congressional intent behind supervised release was to assist offenders as they transition back into their communities. Id. (quoting United States v. Johnson, 529 U.S. 53, 59 (2000)). Consequently, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." Id.

---

[6]     The Government inexplicably argues that a term of supervised release is a form of punishment that involves restrictions on liberty, and cites Gall v. United States, 552 U.S. 38, 48 (2007). But the word "punishment" is not even mentioned on page 48, and courts have not interpreted this opinion in such a manner, as evidenced by Murray. However, the opinion does support their proposition that a term of supervised release involves restrictions on freedom.

In this case, the Court concludes that early termination of Mabry's supervised release term is in the interest of justice because the purpose of supervised release, i.e., his successful reentry into the community, has been accomplished, as evidenced by the absence of arrests or convictions since his release from custody, his steady employment, stable residence, his sobriety, and the relatively short time left on his supervised release term.

### 3. Whether Mabry's Conduct Warrants Early Termination

Finally, in relation to whether Mabry's conduct warrants early termination, the Court "need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." See United States v. Melvin, 978 F.3d 49, 53 (3d Cir. 2020). The Third Circuit has elaborated as follows:

> We think that "[g]enerally, early termination of supervised release under § 3583(e)(1)" will be proper "only when the sentencing judge is satisfied that new or unforeseen circumstances" warrant it. That is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, we would expect that something will have changed in the interim that would justify an early end to a term of supervised release. But we disavow any suggestion that new or unforeseen circumstances must be shown.

Id. (citations omitted).

The Government argues that termination of supervised release is not warranted here because there has been no change in circumstances. While a change in circumstances is generally the basis for granting early termination of supervised release, the obverse does not follow, i.e., the mere absence of such a change or extraordinary circumstances is not a basis for denying it. See id. Thus, the Court finds that a change in circumstances is not necessary in this case and that Mabry's conduct during the term of his supervised release warrants early termination of supervised release. See supra Section IV.B.2.

**V. CONCLUSION**

As a result of the foregoing, the Government has failed to show that the waiver is enforceable, Mabry has pointed to satisfaction of the § 3553(a) factors, and the Court has concluded that the interests of justice and Mabry's conduct warrant early termination of supervised release. An appropriate order follows.